Filed 5/6/14  P. v. Sanchez CA4/1
Reposted to provide correct version

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL SANCHEZ,<br><br>    Defendant and Appellant. | D063406<br><br><br>(Super. Ct. No. SCD238471) |


APPEAL from a judgment of the Superior Court of San Diego County, Charles G. Rogers, Judge.  Affirmed.

Theresa O. Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Eric A. Swenson and William Murdoch Wood, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

The People charged Manuel Sanchez with 15 counts of committing a lewd act on a child (Pen. Code, § 288, subd. (a)).[1] The alleged victims were his stepchildren, B.M. (counts 1-13) and E.M. (counts 14-15). The People alleged that counts 1 through 13 and count 15 involved substantial sexual conduct, pursuant to section 1203.066, subdivision (a)(8). The People further alleged that the information had been timely filed pursuant to section 803, subdivision (f) (counts 1-9, 14-15) and section 801.1, subdivision (a) (counts 10-13).

In November 2012, a jury found Sanchez guilty on counts 2, 4, 7, 8, 10, and 12. The jury also found true the special allegations discussed above pertaining to these counts. The jury was unable to reach a unanimous verdict on the remaining counts.

In December 2012, the trial court sentenced Sanchez to a total term of 18 years in prison, consisting of an upper term of eight years on count 2, and consecutive two-year terms on the remaining counts.

On appeal, Sanchez claims that the trial court erred in admitting evidence of his commission of various uncharged sexual offenses. Sanchez also claims that the trial court erred in admitting evidence of B.M. and E.M.'s out-of-court disclosures of the molestations; in denying his request for a continuance of the trial; and in admitting

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

statements made by Sanchez's son that indicated his son's belief that Sanchez was guilty and lacked remorse. We affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The People's evidence*

1.    *The charged offenses*[2]

In 1993, M.C. began dating Sanchez. At the time, M.C. had two daughters from a previous marriage, seven-year-old B.M., and 11-year-old E.M. Sanchez also had three children from a previous marriage: Glory, Manny Jr., and Cesar. About a year after they started dating, Sanchez and M.C. married and the families moved into a new house together.

On one occasion, shortly after the families moved in together, Sanchez and B.M. were alone in the new house. Sanchez locked the front door, looked out the windows, closed the curtains, sat on the couch, and asked B.M. to sit on his lap, which she did. B.M. was wearing a sundress. Sanchez rubbed B.M.'s vaginal area over her underwear (count 4). When someone attempted to enter the house, Sanchez pushed B.M. off of his lap and walked away. On another occasion around the same time, Sanchez was on a futon with a blanket on the living room floor watching movies with the family. After everyone else went to bed, Sanchez had B.M. rub his penis with her hand (count 2).

---

2    Although the People presented evidence that Sanchez committed several lewd acts in addition to those discussed in the text, we focus on the charged offenses on which the jury found Sanchez guilty.

As B.M. got older, Sanchez often gave B.M. massages, during which he would frequently touch B.M.'s vaginal area over her clothing (count 8). Sanchez also had B.M. touch his penis (count 7). Sanchez continued molesting B.M., by touching her vaginal area both under and over her clothing (counts 10 and 12), until at least her twelfth birthday.

Although B.M. and E.M. both testified that Sanchez molested E.M., the jury was unable to reach a verdict with respect to the offenses in which E.M. was the named victim.[3]

2. *Additional evidence pertaining to the charged offenses*

At some point when B.M. was in sixth grade, B.M. told her mother that Sanchez had been touching her and E.M. inappropriately. M.C., Sanchez, B.M. and E.M. had a meeting during which Sanchez cried and apologized, but claimed that he did not remember having done anything inappropriate. Sanchez agreed that a lock should be placed on the girls' bedroom door.

One night in January 2012, B.M. told M.C. that Sanchez had continued to molest her and E.M. even after the family meeting that took place when B.M. was in sixth grade. Cesar came to the family home and had a private discussion with Sanchez. Sanchez admitted to Cesar that he had touched B.M. inappropriately on one occasion, but attempted to minimize the extent of the molestation. Cesar reported Sanchez's admission

---

3    E.M. admitted during her testimony that she had a sexual relationship with Sanchez after she became an adult. E.M. stated that Sanchez would provide her with money or drugs in exchange for sex.

to several other family members and B.M.'s boyfriend, and urged them to call the police. B.M.'s boyfriend called the police, who arrested Sanchez shortly thereafter.

Catherine McLennan, a supervisor and forensic interviewer with the Forensic Health Department at Palomar Health, testified about a variety of misconceptions pertaining to victims of child molestation, including the reasons that children who are victims of sexual abuse may delay disclosing the abuse.

3.      *The uncharged sexual offenses*

The People presented evidence that Sanchez repeatedly molested Vanessa R. (Vanessa), the younger sister of his first wife, when she was between eight and 15 years old. The molestations included Sanchez touching Vanessa's vaginal area and having Vanessa rub his penis.

Lynn A. (Lynn) was a friend of E.M.'s in junior high and high school. Lynn testified that on one occasion when she was in high school, Sanchez gave her a massage. He began by rubbing her legs, and then moved his hands up "close to the buttocks area." Lynn explained that Sanchez was "very close" to touching her vaginal area and that she was "extremely uncomfortable."

Tess O. (Tess) is B.M. and E.M.'s cousin. Sanchez frequently tried to kiss Tess on the mouth, touched, massaged, and kissed her hands, and told her that her hands were beautiful. On one occasion when Tess was staying overnight, she went downstairs wrapped in a towel to retrieve some clothing. Sanchez was downstairs and turned his head to watch Tess go back upstairs. According to Tess, Sanchez tried to look underneath the towel as she ascended the stairs.

5

B.    *The defense*

Glory, Sanchez's daughter, testified that she never saw Sanchez act inappropriately with either B.M. or E.M.

III.

DISCUSSION

A.    *The trial court did not abuse its discretion in admitting evidence of Sanchez's commission of uncharged sexual offenses*

Sanchez claims that the trial court erred in admitting evidence of his commission of uncharged sexual offenses.  We apply the abuse of discretion standard of review to Sanchez's claim.  (See, e.g., *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*) ["A challenge to admission of prior sexual misconduct under Evidence Code sections 1108 and 352 is reviewed under the deferential abuse of discretion standard"].)

1.    *Governing law*

a.    *The statutory scheme*

Evidence Code section 1108, subdivision (a) provides:

> "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101,[4] if the evidence is not inadmissible pursuant to Section 352."

---

4    Evidence Code section 1101 provides in relevant part:  "(a) Except as provided in this section and in Section[] . . . 1108  . . . , evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

6

Evidence Code section 352 provides:

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

b.      *Relevant case law*

In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), the Supreme Court described the factors that a trial court should consider in determining whether to exclude evidence that is otherwise admissible pursuant to Evidence Code section 1108, pursuant to Evidence Code section 352:

" '[T]rial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' [Citations.]" (*Falsetta, supra,* at p. 917.)

The *Falsetta* court explained that "the probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

A trial court need not expressly refer to all of the *Falsetta* factors in considering whether to exclude evidence pursuant to Evidence Code section 352. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1168 [" '[W]e are willing to infer an implicit weighing by the

trial court on the basis of record indications *well short* of an express statement.'
[Citation.]"].)

2.    *Factual and procedural background*

a.    *The People's motion*

Prior to the trial, the People filed a motion seeking permission to present evidence at trial of Sanchez's commission of uncharged sexual offenses against four females, pursuant to Evidence Code section 1108.

The People sought to admit evidence that Sanchez had repeatedly molested Vanessa, beginning when she was eight or nine years old.  The People stated that Sanchez had touched Vanessa's vaginal area on approximately 10 occasions.

The People also sought to admit evidence that Sanchez molested Tess.  The People claimed that Sanchez "tried to kiss [Tess] on the lips every time he saw her," and that he "commented often on [Tess's] hands, which made her feel uncomfortable."  The People also claimed that Sanchez "tried to look up [Tess's] towel" after she had taken a shower at his house.

In addition, the People sought permission to introduce evidence that Sanchez had inappropriately touched Lynn on one occasion.  The People stated that Sanchez "massaged her legs, buttocks, inner thighs, and got quite close to touching her vagina before the molest[ation] was interrupted . . . ."

Finally, the People sought to introduce evidence that Sanchez had inappropriately touched a woman named Chloe C., who rented a room in his house.  The alleged touching occurred while Sanchez was giving Chloe a foot massage.  The People claimed

8

that Sanchez "began by touching her feet, moved up her legs, and [was] touching her inner thigh between the top of her leg and near her vaginal area."

The People argued that the uncharged offense evidence should not be excluded pursuant to Evidence Code section 352. In support of this contention, the People contended that the uncharged acts were similar in nature to the charged acts, but not more egregious. The People also maintained that the uncharged offenses involved girls similar in age to B.M. and E.M., and that the acts were not overly remote.

b. *The trial court's hearing on the motion*

The trial court held a hearing on the People's motion. Defense counsel argued that the trial court should exclude all of the uncharged sexual offense evidence. With respect to Tess, counsel argued that Sanchez's comments regarding Tess's hands and his kissing her did not amount to sexual offenses. With respect to the alleged towel incident, counsel argued that the evidence consisted of "speculation about speculation." As to Chloe, defense counsel pointed out that she was approximately 21 years old at the time of the incident. Defense counsel further argued that the Chloe had consented to the massage and that Sanchez's actions did not constitute a sexual offense. Similarly, defense counsel argued that Sanchez's act in giving Lynn a "leg massage" did not constitute sexual misconduct. As to Vanessa, counsel argued that the uncharged conduct was "very remote in time."

In response, the prosecutor provided additional details of the uncharged offenses that she maintained warranted admitting the evidence. As to Tess, the prosecutor noted that Sanchez would "try to give her huge, big kisses on the mouth" in a "relatively

9

aggressive . . . action that she . . . believed was wrong."  The prosecutor also argued that the jury could infer that Sanchez harbored a "sexual intent" when he "massag[ed] and kiss[ed] [Tess's] hands and talk[ed] to her about how lovely her hands were."  With respect to Chloe, the prosecutor contended that the touching in question was not "something innocuous during a massage," and claimed that Sanchez had touched Chloe "where [her] legs basically me[t] [her] vaginal area."  As to Lynn, the prosecutor argued that "she was in junior high or high school," and that Sanchez "engaged her in a massage and again tried to touch her vaginal area."  With respect to Vanessa, the prosecutor argued that she had disclosed the molestations "when it happened."[5]

### c. *The trial court's ruling*

The trial court ruled that the People would be permitted to present evidence pertaining to Sanchez's commission of offenses against Vanessa, Tess, and Lynn,[6] but would not be allowed to present evidence with respect to Chloe.  The court began its analysis by stating that it believed that the evidence pertaining to Vanessa, Tess, and Lynn constituted evidence of Sanchez's commission of sexual offenses as defined by Evidence Code section 1108.

---

[5]     In a pretrial motion, the People argued that the "molestation of Vanessa was likely in the early 1980s and late 1970s."  The People alleged that the charged offenses took place between 1994 and 1997.  Based on comments made by counsel at the hearing on the admissibility of the uncharged sexual offense evidence, the trial court could reasonably have found that the uncharged acts against Tess and Lynn were committed near, or within, this 1994 to 1997 time period.

[6]     Vanessa, Tess, and Lynn all testified at trial concerning the uncharged sexual offenses as described in part II.A.2., *ante*.

10

The court then stated that the uncharged sexual offense evidence would not be excluded pursuant to Evidence Code section 352.  The court reasoned:

> "The overarching question on the probative value side is whether it is reasonable to infer from this conduct a certain character trait, which, in turn, would provide a basis for a reasonable inference [to find] that the defendant committed the charged crimes.
>
> "I think that there are two significant character traits that these acts reveal.  [¶]  One is, frankly, a sexual interest in children, underage women.  That certainly provides a basis to infer that he committed the sexual acts that are charged in this case.  [¶]  Frankly, I think also important is the control issue, the power and control that those acts exhibit.  That's important because that character trait shows or addresses the means by which he carries out his sexual intent.  [¶] There is the real element of control, I think.  These girls are all either family members or closely associated with family members. He occupies the position of trust.
>
> "At least the acts with respect to Lynn and [Tess] . . . they're begun by subterfuge.  They're clearly sexual.
>
> "I think that . . . there's a strong probative value.  I think it is sufficiently likely that they occurred, that we're not letting in ephemeral or speculative, could-have-happened evidence. I don't think it's going to be confusing.  I think the requisite similarity is helpful.  And they pertain to . . . the time period which I think is particularly relevant."

The trial court stated that although the evidence with respect to Chloe also could be said to show "an ongoing trait," the court would exclude the evidence on the basis that the incident involving Chloe was "qualitatively different" from the charged offenses.

11

3.      *The trial court did not err in determining that Sanchez's conduct with respect to Tess and Lynn constituted sexual offenses as defined in Evidence Code section 1108*

Sanchez claims that the trial court erred in admitting the evidence of the uncharged sexual offenses with respect to the "acts relayed by Tess [] and Lynn [] [because they] do not qualify as 'sexual acts' under Evidence Code section 1108."

a.      *The relevant statutory scheme*

As noted above, in a criminal action in which a defendant is accused of a sexual offense, Evidence Code section 1108 may operate to remove evidentiary restrictions contained in Evidence Code section 1101 on the introduction of "evidence of the defendant's commission of another sexual offense."  (Evid. Code, § 1108, subd. (a).)  "[A] sexual offense must qualify as a crime to be admissible under section 1108."  (*People v. Cottone* (2013) 57 Cal.4th 269, 287.)

Evidence Code section 1108 defines "sexual offense" as including "Any conduct proscribed by Section . . . 288 . . . or Section . . . 647.6, of the Penal Code."  (Evid. Code § 1108, subd. (d)(1)(A).)

Section 288, subdivision (a) criminalizes the commission of lewd acts "upon or with the body, or any part or member thereof . . . with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ."

Section  647.6, subdivision (a) makes it illegal to "annoy[] or molest[] any child." A violation of section 647.6 requires proof of the following elements:

> "(1) [T]he existence of objectively and unhesitatingly irritating or annoying conduct; (2) motivated by an abnormal sexual interest in children in general or a specific child; (3) the conduct is directed at a

12

child or children, though no specific child or children need be the target of the offense; and (4) a child or children are victims." (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1396, fn. omitted.)

      b.     *Application*

Sanchez contends that evidence that he attempted to look under a towel that Tess was wearing as she walked up the stairs in his house was inadmissible because Tess's testimony concerning this event was "pure speculation," and he further maintains that her testimony was not credible.

Attempting to look under a towel that a child is wearing constitutes "objectively and unhesitatingly irritating or annoying conduct" (*People v. Phillips*, *supra*, 188 Cal.App.4th at p. 1396), which, when accompanied by the requisite prurient mental state, may give rise to a violation of section 647.6. In addition, the trial court could have reasonably rejected Sanchez's contention that Tess's testimony was speculative, and his suggestion on appeal that Tess's testimony was not believable is a contention that goes to the weight, rather than the admissibility, of the evidence.

Sanchez also claims that evidence that he would kiss Tess and massage and kiss her hands did not constitute a sexual offense. The trial court reasonably found otherwise. (See *People v. Lopez* (1998) 19 Cal.4th 282, 291 ["Physical affection among relatives, generally considered acceptable conduct, nonetheless could satisfy the 'any touching'

13

aspect of section 288, subdivision (a), and violate that section if accompanied by the requisite lewd intent"].)[7]

Finally, Sanchez claims that the trial court erred in concluding that Sanchez's act of massaging Lynn's legs constituted a sexual offense. Again, the trial court reasonably found otherwise. (See *People v. Martinez* (1995) 11 Cal.4th 434, 445 ["*[A]ny* touching of an underage child is 'lewd or lascivious' within the meaning of section 288 where it is committed for the purpose of sexual arousal"].)[8]

Accordingly, we conclude that the trial court did not err in determining that Sanchez's conduct with respect to Tess and Lynn constituted sexual offenses as defined in Evidence Code section 1108.

4.      *The trial court was not required to exclude the evidence of Sanchez's commission of sexual offenses on the ground that the offenses in question purportedly took place long before the trial*

Sanchez claims that the trial court abused its discretion in admitting the evidence of uncharged sexual offenses because they were purportedly committed so long ago that he was unable to prepare a defense. In support of this contention, Sanchez notes that the uncharged offenses against Vanessa ostensibly took place "between 28 and 35 years before trial," and that the offenses against Lynn and Tess purportedly took place "at least more than 10 years before trial."

_____

[7]      The trial court also could have reasonably found that Sanchez's conduct in kissing Tess and massaging and kissing her hands constituted a violation of section 647.6.

[8]      The trial court also could have reasonably found that Sanchez's massaging of Lynn's legs near her vaginal area constituted a violation of section 647.6.

14

"Numerous cases have upheld admission pursuant to Evidence Code section 1108 of prior sexual crimes that occurred decades before the current offenses." (*People v. Robertson, supra,* 208 Cal.App.4th at p. 992.) For example, in *Robertson*, *supra*, at page 992, the court rejected a defendant's claim that the trial court erred in admitting evidence of a sexual assault committed decades before the charged offense:

> "Appellant argues that the prior sexual assault, which occurred approximately 34 years before the current sexual offenses, was too remote to have probative value and should have been excluded for this reason. We disagree. 'No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.' [Citation.] ' "[S]ubstantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses. [Citation.]" [Citation.]' [Citation.]"

In this case, while the uncharged offenses purportedly took place a number of years before *trial*, none of the uncharged offenses were particularly remote when compared to the *charged offenses*. Further, while Sanchez claims that due to the remoteness of the uncharged offenses, he was unable to defend against the evidence of those offenses, he had pretrial notice of the offenses that the prosecution intended to introduce, subjected Vanessa, Tess, and Lynn to cross-examination, and presented positive character evidence.[9] Further, although Sanchez claims that the fact that the prior molestations were "unreported" made it particularly difficult to defend against the evidence pertaining to those offenses, he acknowledges that Vanessa "told family members [about the molestations] when she was 18 years old."

---

9     Sanchez's daughter, Glory, testified that he had never molested her or her children.

15

The trial court could have reasonably concluded that any prejudice that Sanchez might suffer from having to defend against uncharged offenses that were purportedly committed long ago was outweighed by the probative value of the evidence for the purpose of demonstrating Sanchez's sexual interest in underage women.[10] Under these circumstances, we conclude that the trial court did not abuse its discretion in refusing to exclude the evidence of uncharged sexual offenses on the ground that the incidents at issue were so remote in time as to prevent Sanchez from preparing a meaningful defense.

B.  *The trial court did not abuse its discretion in admitting evidence of B.M.'s and E.M.'s out-of-court disclosures of Sanchez's molestations*

Sanchez claims that the trial court erred in admitting evidence of B.M.'s and E.M.'s out-of-court disclosures of his molestations. Specifically, Sanchez claims that the statements should have been excluded as hearsay and pursuant to Evidence Code section 352.[11] We apply the abuse of discretion standard of review to this claim. (See e.g., *People v. Williams* (1997) 16 Cal.4th 153, 197 ["On appeal, a trial court's decision to admit or not admit evidence . . . is reviewed only for abuse of discretion"].)

1.  *Governing law*

"[P]roof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's

---

[10]  In this regard, we note that the trial court *excluded* evidence pertaining to Chloe, who was approximately 21 years of age at the time of the alleged incident involving her.

[11]  We assume for purposes of this decision that Sanchez adequately preserved all of the evidentiary objections with respect to the disclosures at issue.

16

disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*People v. Brown* (1994) 8 Cal.4th 746, 749-750 (*Brown*).) The *Brown* court stated that "in light of the narrow purpose of its admission, evidence of the victim's report or disclosure of the alleged offense should be limited to the fact of the making of the complaint and other circumstances material to this limited purpose." (*Id*. at p. 763.) The *Brown* court explained, "Caution in this regard is particularly important because . . . a jury may well find it difficult not to view these details as tending to prove the truth of the underlying charge of sexual assault [citation], thereby converting the victim's statement into a hearsay assertion . . . ." (*Ibid*.)

"Such extrajudicial statements also may be admissible for a *hearsay* purpose (i.e., to prove the truth of the content of the statement) under an exception to the hearsay rule . . . provided the requirements for their admission under that exception are satisfied in the particular case." (*Brown, supra*, 8 Cal.4th at p. 749, fn. 1.)

2. *Application*

Sanchez contends that the trial court permitted "detailed testimony from a number of third party witnesses, including Lynn[], Tess[], [Tess's father], [D. O.], and [B.M.'s boyfriend], [A.G.], as to [E.M.] and [B.M.'s] reports to them that [Sanchez] had sexually molested them," and argues that the trial court should have excluded this evidence as inadmissible hearsay. We consider each witness's testimony in turn.

Lynn testified that E.M. told her that Sanchez entered E.M.'s room at night, lifted up the covers, and touched her on her legs. The trial court did not abuse its discretion in

17

concluding that Lynn's testimony was admissible for the limited nonhearsay purpose identified in *Brown*—that is, to establish the fact of, and the circumstances surrounding, E.M.'s disclosure to Lynn.

Tess testified as to the specifics of B.M.'s disclosures to her by describing the ways in which B.M. stated that Sanchez had molested her. The trial court admitted Tess's testimony in this regard pursuant to the prior consistent statement exception to the hearsay rule. (See Evid. Code, §§ 1236, 791.)[12] Thus, B.M.'s statements to Tess were admitted for their *truth*. (See *People v. Crew* (2003) 31 Cal.4th 822, 849.) As such, the details of the molestations as stated by B.M. in the disclosures that she made to Tess were fully admissible. (See *Brown, supra*, 8 Cal.4th at p. 749, fn. 1.)

D.O testified that B.M. had disclosed to Tess "that [B.M.] had been molested by Mr. Sanchez." Similarly, A.G. testified only that B.M. had disclosed to him that Sanchez had sexually abused her. Neither D.O nor A.G. provided any details concerning the molestations revealed in these disclosures. We therefore reject Sanchez's contention that D.O's and A.G.'s testimony contained "detailed statements" of B.M.'s disclosures.

Sanchez also contends that evidence of the disclosures should have been excluded pursuant to Evidence Code section 352, because the "risk of undue prejudice far outweighed any probative value." Specifically, Sanchez appears to contend that the trial court erred in overruling defense counsel's Evidence Code section 352 objection that testimony concerning the disclosures should be excluded because the witnesses might not

---

12    Sanchez does not contend in his opening brief that the trial court erred in admitting the statements pursuant to this exception.

18

have an accurate memory of the victim's disclosures, and that the witnesses might be embellishing the disclosures in the criminal proceedings. The trial court carefully considered these objections, and Sanchez points to nothing in the record that would suggest that the court abused its discretion in concluding that the probative value of the evidence was not outweighed by the possibility of such prejudice. Accordingly, we conclude that the trial court did not abuse its discretion in declining to exclude the evidence pursuant to Evidence Code section 352.

We also reject Sanchez's contention that the "evidence should have been excluded as cumulative." "Evidence is cumulative if it is repetitive of evidence already before the jury." (*People v. Evers* (1992) 10 Cal.App.4th 588, 599, fn. 4.) A trial court may exercise its discretion to exclude cumulative evidence, pursuant to Evidence Code section 352. (See *People v. Partida* (2005) 37 Cal.4th 428, 436, fn. 2.) The trial court did not abuse its discretion in determining that E.M.'s and B.M.'s various disclosures to different individuals were not cumulative.

Finally, Sanchez claims that the trial court erred in permitting witnesses to "provide[] impressions . . . of what the girls reported." However, none of the testimony that Sanchez cites in support of this contention constitutes the witnesses' impressions concerning the credibility of the victims' complaints. Rather, the testimony consisted merely of various witness's observations of the victims near the times of the molestations. For example, Sanchez notes that Tess testified that B.M. frequently had stomachaches and D.O testified that B.M. was prone to "nervousness." Accordingly, we reject

Sanchez's contention that the trial court erred in admitting " 'hindsight' impressions that bolstered the reliability" of B.M.'s and E.M.'s complaints.

C.    *The trial court did not abuse its discretion in denying defense counsel's request for a continuance of the trial*

Sanchez claims that the trial court erred in denying defense counsel's request, made on the eve of trial, for a "short continuance" of the trial to permit counsel to consult with a videography expert concerning various video clips that the People intended to play at trial.

1.    *Factual and procedural background*

Two days before the commencement of voir dire, the People filed a trial brief in which they sought permission to admit certain items of evidence at trial, including "video clips of the victims' childhood." The People argued that "some of the video tapes have evidence of being erased or taped over," and that "some of the deleted material (which can be accessed by viewing the tapes frame by frame at slow speed) . . . appears to corroborate the [victims'] testimony."

At a hearing on the motion the following day, the prosecutor explained that police had found numerous videotapes at Sanchez's home, some of which appeared to have been taped over. The prosecutor explained that a videography expert had viewed a selection of the tapes at very slow speeds. When so viewed, it was possible to see preexisting images on the tapes (i.e. images that remained from a previous recording that had been almost, but not entirely, taped over). The preexisting images included a scene apparently taken from inside a laundry hamper, a scene of Sanchez in his boxer shorts, and a scene of

20

Sanchez naked. The prosecutor argued that the scene taken from inside the hamper corroborated B.M.'s testimony that Sanchez had surreptitiously videotaped her.

Defense counsel argued against the admissibility of the evidence and requested a continuance so that she could consult with a videography expert. Defense counsel argued that she needed to consult with an expert in order to understand how images from a previous recording section might remain on the videotape. The trial court responded that if a blank tape had been used then there would not "be something that was recorded there before, correct?" Defense counsel responded, "I understand that portion of it." The court then asked, "Well, what does an expert need to tell us about that?"

Defense counsel stated that she had just received an e-mail from the prosecutor's videography expert and that the e-mail contained technical language. Counsel stated that she would like to consult with an expert in videography in order to be able to fully understand the prosecution expert's e-mail.

After further discussion concerning the admissibility of the evidence, the trial court stated:

> "The fact that we have tape-overs is admissible. The People are
> going to be able to put in evidence from a witness, an expert or even
> an investigator, to explain that there were tape-overs. I'm satisfied,
> frankly, unless somebody tells me otherwise—I don't think this
> needs expert testimony."

The trial court ruled that the People would be permitted to present evidence of the preexisting image of the video clip apparently taken from inside a hamper. However, the court excluded the scenes of Sanchez in his boxer shorts and standing naked, pursuant to

21

Evidence Code section 352. The trial court also denied defense counsel's request for a continuance.

2. *Governing law and standard of review*

In *People v. Fuiava* (2012) 53 Cal.4th 622, 650, the Supreme Court outlined the law governing a trial court's ruling on a party's request for a continuance, and appellate review of such a ruling:

> " '[T]he decision whether or not to grant a continuance of a matter rests within the sound discretion of the trial court. [Citations.] The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.] [¶] Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered. [Citations.] Moreover, the denial of a continuance may be so arbitrary as to deny due process. [Citation.] However, not every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence. [Citation.]' [Citation.] '[T]he trial court may not exercise its discretion "so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." [Citation.]' [Citation.]"

" 'Absent a showing of an abuse of discretion and prejudice, the trial court's denial [of a request for a continuance] does not warrant reversal.' [Citation.]" (*People v. Leavel* (2012) 203 Cal.App.4th 823, 830.)

3. *Application*

Sanchez claims that the trial court erred in denying defense counsel's request for a continuance to permit counsel to consult a videography expert who might be able to rebut the prosecution's expert's anticipated testimony that the People had found videotapes at Sanchez's house that appeared to have been taped over. We are not persuaded.

22

At the hearing at which defense counsel requested a continuance of the trial, the trial court indicated that expert testimony was not required in order for the People to present evidence that certain videotapes appeared to have been taped over. Further, the trial court indicated that it was common knowledge that a tape would not contain preexisting images unless it had been taped over. In response, defense counsel did not provide any compelling argument to the contrary or suggest that a defense expert might be able to provide any testimony to the contrary.

Sanchez also suggests that a continuance was warranted to permit defense counsel to consult with an expert who would assist counsel in understanding technical terms contained in the prosecution's videography expert's e-mail. We reject this argument because the prosecutor's expert did not use such terminology during his testimony at trial and Sanchez fails to demonstrate that an understanding of such terms was material to his counsel's presentation of a defense.

Finally, we are not persuaded by Sanchez's contention that a "short continuance" of the trial was warranted to permit defense counsel to "properly prepare for cross-examination or the presentation of rebuttal evidence." The People's videography expert did not testify until October 30, the same day that the People rested, which was more than two weeks after the trial court held the October 15 hearing on the People's motion to admit the video evidence. Thus, there was ample time for defense counsel to have consulted a videography expert and to gather rebuttal evidence.

Accordingly, we conclude that the trial court did not abuse its discretion in denying defense counsel's request for a continuance of the trial.

23

D.	*The trial court did not commit any reversible error in admitting evidence concerning Cesar's belief that Sanchez was guilty and lacked remorse*

Sanchez claims that the trial court made several erroneous evidentiary rulings that he contends improperly permitted the jury to learn that his son, Cesar, believed that Sanchez was guilty and lacked remorse. We consider each ruling in turn, applying the abuse of discretion standard of review. (See e.g., *People v. Williams*, *supra*, 16 Cal.4th at p. 197.)

1.	*M.C.'s testimony concerning the aftermath of Cesar's conversation with Sanchez*

M.C. testified that one evening in January 2012, Cesar had a conversation alone with Sanchez in an upstairs bedroom of the family residence. The conversation lasted approximately 45 minutes. The following colloquy then occurred:

> "[The prosecutor:] And after [Cesar] came back down what happened?
>
> "[M.]: He was white as a ghost. Collapsed on the couch. And he says I say call the police and have the motherfucker locked up in jail for life.
>
> "[Defense counsel]: Objection. [Evidence Code section] 352, your honor.
>
> "The court: Overruled."

Sanchez argues that the above-quoted portion of M.C.'s testimony had no probative value and should have been excluded pursuant to Evidence Code section 352. Specifically, Sanchez maintains that M.C.'s testimony concerned "Cesar's statement regarding [Sanchez's] admission of guilt and Cesar's belief that [Sanchez] expressed no remorse." Sanchez further contends that M.C.'s testimony lacked probative value

24

because an adjudication of his guilt "was solely within the province of the jury," and Cesar's opinion as to whether Sanchez was guilty or was remorseful for his actions was inadmissible. (Citing *People v. Coffman* (2004) 34 Cal.4th 1, 77 [" 'opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact' "].)

The trial court could have reasonably concluded that Cesar's statement that the family should call the police was based on Sanchez having made an admission of guilt to Cesar during their conversation.[13] Further, the trial court did not abuse its discretion in concluding that the probative value of the evidence was not substantially outweighed by any prejudicial impact of the jury learning that Cesar believed that Sanchez was guilty. M.C. did not testify that Cesar said that he believed that Sanchez lacked remorse; Sanchez's argument in this regard is without merit.

Sanchez also contends that M.C.'s testimony as to Cesar's statement was a "classic example[] of inadmissible hearsay." No hearsay objection was raised at trial. Sanchez's claim in this regard is thus forfeited. (See, e.g., *People v. Jennings* (2010) 50 Cal.4th 616, 654 [concluding that defendant's claim that admission of statement "violated the Evidence Code prohibition against hearsay evidence . . . was forfeited . . . by defendant's failure to make a hearsay objection at trial"]; Evid. Code, § 353, subd. (b) [reviewing

---

[13] The People stated in their trial brief that Sanchez admitted to Cesar during the conversation that he had touched B.M. inappropriately on one occasion. After M.C. testified, Cesar testified that Sanchez had made such an admission during their conversation. Sanchez's statements to Cesar were admissible as statements of a party. (Evid. Code, § 1220.)

25

court may reverse judgment only where "the admitted evidence should have been excluded on the ground stated [in the trial court]"].)

> 2. *A.G.'s testimony concerning the events that took place after Cesar's conversation with Sanchez*

A.G. testified that he was also present at the family residence on the night in January 2012 when Cesar had the conversation with Sanchez. In describing what occurred after the conversation, the following colloquy occurred during A.G.'s direct examination:

> "[The prosecutor]: Okay. And what happened when Cesar came back downstairs?
>
> "[A.G.]: [Cesar] was just—[Cesar] looked upset. And [Cesar] was shaking his head and saying, yes [Sanchez] did it, he's[14] ready—
>
> "[Defense counsel]: Objection. Hearsay.
>
> "[The court]: Ladies and gentlemen, I'm going to allow him to finish his answer. [¶] But this is an area of limited purpose testimony. . . . [¶] You may consider it as evidence as to what others were told to explain why they then took the actions that they took. . . .
>
> "[¶] . . . [¶]
>
> "[A.G.]: [Cesar] just said that, yes, [Sanchez] had, in a roundabout way, admitted it, but used I'm a man of God. I'm a man of faith. I will put it in [God's] hands as to what [God's] going to do. And whether you guys want to file charges on me, it's up to you. [¶] That's basically what Cesar had said when he came down."

---

14    It appears that A.G. was referring to Sanchez, but in light of the interrupted sentence, we are not certain. Thus, we have maintained this pronoun as it appears in the transcript.

A.G. continued, explaining that he called the police shortly after Cesar made these statements.

Sanchez claims that A.G.'s testimony as to Cesar's statements about Sanchez's admissions were inadmissible hearsay. However, as limited by the trial court, Cesar's and Sanchez's statements were not offered for their truth, and thus, did not constitute hearsay. (Evid. Code, § 1200 [" 'Hearsay evidence' " is evidence of a statement that was made other than by a witness while testifying at the hearing *and that is offered to prove the truth of the matter stated*" (italics added)].)[15] While Sanchez claims that the court's limiting instruction "did not provide an[y] limitation to the jury as to its considerations of Cesar's opinion that appellant admitted guilt," that is not correct. By informing the jury that it could consider the evidence only to explain the actions that A.G. and the other family members took in the wake of Cesar's statements, the limiting instruction *did* prohibit the jury from considering the evidence for any other purpose.[16] Sanchez also contends that A.G.'s testimony should have been excluded pursuant to Evidence Code section 352. No such objection was raised at trial. Thus, Sanchez's claim in this regard is forfeited. (Evid. Code, § 353.)

---

[15] Sanchez does not contend that A.G.'s testimony was inadmissible for the purpose identified by the trial court, namely to explain the actions that the family members took in the wake of Cesar's statements.

[16] The court also instructed the jury at the end of the case, "Where I did tell you that evidence was admitted for a limited purpose, please consider the evidence for that purpose, *and not for any other reason.*" (Italics added.)

27

3. *Cesar's testimony concerning his January 2012 conversation with Sanchez*

a. *Factual and procedural background*

At trial, immediately after Cesar testified that Sanchez had admitted having inappropriately touched B.M. on one occasion, the prosecutor asked Cesar if he had asked Sanchez "any other questions about the molestation." Cesar responded in part by stating that Sanchez was "just deflecting everything off of him all the time," and that Sanchez was "blaming other people and not accepting the blame on himself." The trial court overruled defense counsel's objections that this testimony was speculative and lacked foundation, ruling that Cesar's testimony constituted admissible lay opinion under Evidence Code section 800. Shortly thereafter, the prosecutor asked Cesar, "Did it appear to you, based upon your conversation, that [Sanchez] was making excuses for what he had done?" Cesar responded in the affirmative, and added, "He was deflecting the whole time."

After this testimony, defense counsel stated, "Leading and same objection, which you've already overruled." The trial court responded, "Thank you. [¶] Overruled."

Evidence Code section 800 provides:

"If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:

"(a) Rationally based on the perception of the witness; and

"(b) Helpful to a clear understanding of his testimony."

On appeal, Sanchez claims that the trial court erred in admitting Cesar's testimony as lay opinion. Sanchez contends that Cesar's statement was "in essence, [opinion] that

28

[Sanchez] was not telling the truth," and that a lay witness's opinion as to the credibility of another person's statement is irrelevant and admissible.

We reject this argument because Cesar did not state that he believed Sanchez was being untruthful. Thus, Cesar's testimony was not inadmissible as impermissible lay opinion concerning the credibility of another witness. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1221 [concluding that witness's testimony was not inadmissible lay opinion as to the credibility of another witness because while witness's testimony "might have implied that [witness] thought defendant's molestation allegations were false, [witness] did not actually offer an opinion on this ultimate issue of fact"].) Indeed, rather than testifying that he believed Sanchez was being untruthful, Cesar testified that Sanchez had admitted touching B.M. inappropriately. Further, Cesar's testimony was based directly on his observations of Sanchez during their conversation. The trial court reasonably determined that such testimony was helpful to a clear understanding of Cesar's testimony. (Evid. Code, § 800.) Accordingly, we conclude that the trial court did not abuse its discretion in ruling that Cesar's testimony characterizing his conversation with Sanchez was admissible lay opinion.[17]

---

17    Sanchez also argues that the trial court erred in failing to exclude the evidence as irrelevant and more prejudicial than probative pursuant to Evidence Code section 352. Sanchez did not object on these grounds to Cesar's testimony that Sanchez was "just deflecting everything off of him all the time" and "blaming other people and not accepting the blame on himself." Thus, his contentions with respect to this testimony are forfeited. (Evid. Code, § 353.)

With respect to Cesar's testimony that it appeared that Sanchez was making excuses for what he had done, we assume for purposes of this decision that defense counsel's remark that she was making the "same objection" adequately preserved

4. *Cesar's testimony that it did not appear that Sanchez had any remorse for his actions*

Shortly after Cesar testified that Sanchez had admitted inappropriately touching B.M. on one occasion, the prosecutor asked Cesar, "[D]id it appear to you in your conversation you had with your dad that he was showing any remorse for what he had done?" Defense counsel raised a relevance objection, which the trial court overruled. Cesar responded, "No. And that was the main reason why—."

Defense counsel interrupted Cesar, and stated, "Objection. [¶] It's not relevant as to why he called the police."

The trial court sustained the objection and directed the jury to "disregard the statement about that was the main reason why."

Expressions of remorse have probative value in that they demonstrate consciousness of guilt. (See *United States v. Caro* (4th Cir. 2010) 597 F.3d 608, 629, fn. 19 ["remorse implies consciousness of guilt"].) However, the *absence* of remorse may be irrelevant to prove that a defendant committed a charged crime. (See *People v. Michaels* (2002) 28 Cal.4th 486, 528 ["[a]bsence of remorse is irrelevant to prove that a defendant committed a homicide"].)

---

Sanchez's relevance and Evidence Code section 352 objections. However, on the merits, the trial court did not err in failing to exclude the evidence on these grounds. The trial court could have reasonably concluded that evidence that Sanchez was making excuses for his actions was relevant in determining whether Sanchez had committed the charged offenses, and that the probative value of the evidence was not outweighed by the possibility of prejudice.

30

We assume for purposes of this decision that the prosecutor's question whether Sanchez displayed remorse to Cesar, and not just Cesar's answer, was objectionable.[18] However, any error in failing to overrule defense counsel's objection to this single question was harmless under any standard of prejudice. Immediately preceding this question, Cesar testified that Sanchez had stated after their conversation that he was ready to have the police called and that he was ready to go to jail. In addition, Cesar testified that Sanchez had admitted touching B.M. inappropriately and that Sanchez had explained that he had done so because he had been molested himself. The People also presented evidence that Sanchez *did* express remorse to Cesar after he was in jail. (See part III.E., *post.*) Under these circumstances, the admission of evidence that Cesar did not believe that Sanchez displayed remorse during their January 2012 conversation was harmless.

5. *Cesar's letter to Sanchez while Sanchez was in jail awaiting trial*

a. *Factual and procedural background*

In their trial brief, the People sought permission to introduce in evidence "a letter written by [Sanchez to Cesar] from jail as an admission pursuant to Evidence Code section 1220 and as consciousness of guilt."

---

[18] To the extent that the prosecutor's question did not necessarily call for inadmissible evidence because Cesar might have responded that Sanchez *did* express remorse (see *United States v. Caro*, *supra*, 597 F.3d at p. 629), the trial court did not err in overruling the objection. (See, e.g., 3 Witkin, Cal. Evidence (5th ed. 2012) § 397, p. 553 ["If the question is not bad on its face, i.e., it is not apparent that it calls for inadmissible evidence, there is ordinarily no reason to object. It is only when the improper answer is given that the adverse party has cause for complaint. In this situation, the motion to strike the answer is sufficient and is necessary, and a prior objection is unnecessary and insufficient"].)

At a pretrial hearing, the prosecutor explained that Cesar had written a letter to Sanchez while Sanchez was in jail awaiting trial. According to the prosecutor, in the letter, Cesar told Sanchez that "he needs to accept responsibility and accept the consequences for the molest of B.M. and E.M." The prosecutor noted that Sanchez wrote a letter back to Cesar that, according to the prosecutor, "[could] be read as clearly an adoptive admission by [Sanchez] of the acts." For example, the prosecutor stated that Sanchez had stated in his letter that "he wished he could change the history," and that he had "been a bad father."

Defense counsel argued against the admission of the letters, noting that they contained a number of religious references and that it was a "stretch" to suggest that the letters referred to a "specific belief that [Sanchez is] guilty."

After reviewing the letters, the trial court ruled that they were admissible, pursuant to an adoptive admission theory.

During trial, outside the presence of the jury, defense counsel renewed her objection to the entirety of the letters, and also stated that she wished to raise a specific objection to a portion of Cesar's letter that stated the following:

> " 'There's only been one thing I wanted from you during [¶] . . . this whole ordeal, remorse! Remorse for what you did and remorse for what you were doing. That was the main reason I told [B.M.] and [M.C.] to press charges. I saw no remorse in you. Seeing no remorse in you only told me one thing, that you would do it again.' "

In response, the prosecutor argued that this portion of Cesar's letter was "an important part of the letter because it explains [Sanchez's] response." The prosecutor

explained that this was "[b]ecause [Sanchez] specifically addresses the remorse issue in his response."

The court sustained defense counsel's objection in part, ruling that the last sentence of the passage quoted above would be redacted.

During his testimony, Cesar read the letter that he had written to Sanchez in jail, as redacted by the court. In addition, Cesar read the letter that Sanchez had sent to Cesar in response, in which Sanchez states in relevant part:

> " 'Hi, mijo. I was an irresponsible father. I do accept my failures. I am paying the consequences. I love and miss you all. I am sad that your lives have changed so dramatically. I pray every day for you, for your healing. I'm not proud of the person that I am. The hurt that I've given you is the burden of . . . a lifetime. I wish I could change this history but I can't. I want to be healed as well. I never wanted to hurt anyone. The hate I saw on [M.C.]'s face was crushing. I'm so sorry I could ever make her that way. The hate and anger the girls have is just as disappointing. Seeing that I failed them so much, my mind is filled with scenarios of how I should have been as a father, not the selfish, unforgiving, manipulative person that I became. [¶] Mijo, this was—this wasn't God, just me taking my own path. *Because of my drinking and drug use, my mind could not focus on remorse. But it is . . . there, mijo*." (Italics added.)

b.      *Application*

Sanchez contends that the trial court abused its discretion in permitting Cesar to read that portion of Cesar's letter in which Cesar indicated that he believed that Sanchez lacked remorse for his actions. We are not persuaded. In his letter, Sanchez indicated that he felt remorse for his actions. Expressions of remorse have probative value in that they demonstrate consciousness of guilt. (See *United States v. Caro*, *supra*, 597 F.3d 608 at p. 629.) Further, as the prosecutor argued, the trial court could reasonably conclude

33

that that portion of Cesar's letter in which he stated that he believed that Sanchez *lacked* remorse was admissible in order to provide context to Sanchez's response in which he stated that he *was* remorseful. Further, even without the admission of that portion of Cesar's letter, Sanchez's statement itself suggested that Cesar had accused him of lacking remorse in that Sanchez explained to Cesar that he did indeed feel remorseful.

E.     *There is no cumulative error*

Sanchez claims that to the extent this court concludes that no individual error related to his claims merits reversal, the cumulative error doctrine requires reversal of the judgment.

"Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) Apart from one potential evidentiary error that we have concluded was harmless (see pt. III.D.4., *ante*), we have rejected the remainder of Sanchez's claims. There is thus no cumulative error on which to base a reversal of the judgment.

IV.

DISPOSITION

The judgment is affirmed.

                              _____

                                               AARON, J.

WE CONCUR:

_____

          BENKE, Acting P. J.

_____

              NARES, J.